In re the MARRIAGE OF Mary WIMMER and Willard J. Wimmer

Upon the Petition of Mary Wimmer, Petitioner-Appellee,

And Concerning Willard J. Wimmer, Respondent-Appellant.

No. 83–859.

Court of Appeals of Iowa.

April 24, 1984.

---

Mason G. Ouderkirk of Ouderkirk Law Firm, Indianola, for respondent-appellant.

Henry A. Kleifgren, Asst. County Atty., Child Support Recovery Unit, for petitioner-appellee.

Considered by SNELL, P.J., and SCHLEGEL and SACKETT, JJ.

SNELL, Presiding Judge.

Respondent husband appeals from the trial court's determination of the amount of his delinquency in child support payments. He asserts that he established an oral agreement with petitioner wife to eliminate his obligation to support two of the parties' children during the periods of time they were living with him. We reverse.

The 1976 decree dissolving the marriage of Mary and Willard Wimmer awarded Mary custody of the parties' three children: Willard, Jr., born in 1964; Charles, born in 1966; and Steven, born in 1969. It also directed Willard to pay child support of $20 per week per child until each child reached the age of eighteen, married, or became emancipated.

In 1983, Mary requested that an execution issue for a delinquency in Willard's child support payments. Willard applied for a declaratory judgment that he was not delinquent. He asserted that pursuant to an oral agreement with Mary, he did not owe child support for the extended periods of time Willard, Jr. and Charles had stayed with him from 1977 to 1982. At no time has Steven, the youngest of the three sons, lived with his father since the 1976 divorce. Willard also applied for a modification of the dissolution decree, asking that his child support obligation for Charles be terminated because Charles had begun living with him. At this time, Willard, Jr. was no longer a minor.

At the hearing on Willard's applications, the court found that there was no dispute between the parties that Charles would continue to live with Willard, and it transferred custody of Charles to Willard and terminated Willard's child support obligation to Charles as of the date Charles had moved in. The trial court also found that

Willard had failed to establish an oral contract between the parties as to child support, and that a delinquency of $6,467.40 in his child support payments had thus accrued since the decree. Willard has appealed.

■ Divorced parents may contract between themselves concerning the support of their minor children if the children's best interests are not harmed thereby. It is only necessary to prove such an agreement with reasonable certainty, and the agreement may be shown by conduct and circumstances. *Anthony v. Anthony*, 204 N.W.2d 829, 831 (Iowa 1973). Our review is de novo. Iowa R.App.P. 4. In this case, the only issue is whether Willard sustained his burden of proving with reasonable certainty the existence of an oral agreement with Mary that he would not have to pay child support during those periods when the children were living with him.

■ We believe Willard has sustained his burden. He testified that in early 1977 Mary asked him if their oldest son, Willard, Jr., could live with him (apparently Willard, Jr. and Mary's new husband were not getting along very well). Willard consented to this new arrangement but told Mary that he could not pay support for Willard, Jr. to her while he (the son) was living with him. Willard testified that Mary agreed that he would not be responsible for child support during that period of time. From then on until April of 1982, when Willard, Jr. turned eighteen, he lived with his father intermittently for various lengths of time. During this whole time, Willard assumed that the 1977 agreement was still in effect and Mary did not indicate to him otherwise. The parties' second son, Charles, also lived with Willard at various times after May, 1979. In fact, Charles is now living permanently with Willard and his new wife. The same arrangement prevailed; i.e., Willard did not pay support for Charles to Mary while Charles was living with Willard. This agreement was again confirmed in a conversation between Willard and Mary in February, 1983. At that time, Mary told Willard that she did not expect back child support for those times when Willard, Jr. and Charles were living with Willard.

Charles' testimony confirmed the 1983 agreement; he also testified that he heard Mary on previous occasions tell Willard in person that she did not expect support payments during those times that the children were living with Willard. Mary did not directly deny Willard's testimony regarding the agreement they reached in 1977 and reaffirmed in 1983; at most, she says she does not remember the 1977 agreement. We therefore conclude, contrary to the trial court, that Willard proved with reasonable certainty an agreement was reached whereby he would not have to pay child support for those times when Willard, Jr. and/or Charles lived with him.

■ It remains to be determined how much Willard should be credited against the total arrearage of $6467.40. The record indicates that Willard, Jr. lived with his father a total of 98 weeks after the 1976 divorce decree (47 weeks in 1977, 12 weeks in 1978, 5 weeks in 1979, 26 weeks in 1981, and 8 weeks in 1982) until he (Willard, Jr.) reached his majority in April of 1982. Pursuant to the agreement, therefore, Willard was not obligated to pay the $20 per week for Willard, Jr., as ordered in the decree, during these weeks and is entitled to a credit of $1960 (98 weeks at $20 per week) against his arrearage. With respect to Charles, the record reflects that he lived with Willard for 154 weeks after the decree (30 weeks in 1979, 33 weeks in 1980, 52 weeks in 1981, and 39 weeks in 1982). Willard is therefore entitled to a credit regarding Charles' support in the amount of $3080 (154 weeks at $20 per week). Combining the two amounts, Willard is entitled to a total credit of $5040 against the total arrearage of $6467.40. Mary is entitled to a judgment against Willard in the amount of $1427.40 ($6467.40 less the credit of $5040) representing net delinquent child support accrued as of May. 12, 1983. Costs of this appeal are assessed against Mary.

REVERSED.