**Eugene F. DWYER, Appellant,**

v.

**CLERK OF the DISTRICT COURT FOR SCOTT COUNTY, Appellee.**

No. 86–389.

Supreme Court of Iowa.

April 15, 1987.

Stephen P. Wing of Dwyer & Wing, P.C., Davenport, for appellant.

Thomas J. Miller, Atty. Gen., Stephen C. Robinson, Asst. Atty. Gen., and Realff Otteson, Asst. Co. Atty., for appellee.

McGIVERIN, Justice.

Plaintiff Eugene F. Dwyer appeals from the denial of a writ of mandamus to compel the clerk of court of the Iowa District Court for Scott County to enter on the judgment docket a satisfaction affidavit executed by Dwyer's ex-wife for child support payments made directly to her, not through the office of the clerk of court. We reverse and remand the case to district court for the issuance of the requested writ.

I. *Background facts and proceedings.* In August 1983 a decree was entered dissolving the marriage of Eugene Dwyer and his former wife. The dissolution decree required Dwyer to pay child support in the amount of $212.50 per month for each of the couple's two children and to pay certain medical and tuition expenses for the children. As required by Iowa Code section 598.22 (1983), the decree directed Dwyer to make these payments through the office of the clerk of the district court. Dwyer and his former wife agreed, however, that he would make the payments directly to his ex-wife, bypassing the clerk of court.

In this action, there has never been an assignment of the child support payments by Dwyer's ex-wife to the Iowa Department of Human Services. *See* Iowa Code ch. 252C. The department is not a party to this mandamus proceeding nor was it a party to the underlying dissolution of marriage action.

From 1983 to 1985 Dwyer made the payments, as agreed, directly to his ex-wife. In July 1984 and October 1985 Dwyer filed with the clerk of court sworn affidavits of his ex-wife who acknowledged receipt of the child support payments. The clerk accepted these documents for filing and noted them on the judgment docket. In December 1985 Dwyer sought to file another similar affidavit of satisfaction; however, on this occasion the clerk of court accepted the affidavit for filing but refused to enter the satisfaction affidavit on the dissolution judgment docket. The clerk of court based this refusal on Iowa Code section 598.22, which requires child support payments to be made to the clerk of court, and on a 1985 amendment to that section which specifies that payments to any other person do not satisfy the underlying support obligation. 1985 Iowa Acts ch. 178, § 8 (codified as amended at Iowa Code § 598.22 (Supp.1985)).

Dwyer filed a petition seeking a writ of mandamus to compel the clerk of court to enter the satisfaction affidavit on the judgment docket. *See* Iowa Code ch. 661 (1985). The district court denied mandamus relief, and Dwyer has appealed. The scope of review of this equity action is de novo. Iowa Code § 661.3; Iowa R.App.P. 4.

Mandamus is a special action under Iowa Code chapter 661 "brought to obtain an order commanding an inferior tribunal, board, corporation, or person to do ... an act, the performance ... of which the law enjoins as a duty resulting from an office, trust, or station." Iowa Code § 661.1; *see Stafford v. Valley Community School Dist.*, 298 N.W.2d 307, 309 (Iowa 1980). The action seeks to enforce established rights and corresponding duties imposed by law. *Stafford*, 298 N.W.2d at 309.

In his mandamus action, Dwyer seeks to compel the clerk of court to note the satisfaction affidavit on the dissolution judgment docket. Dwyer argues the clerk of court is under a statutory duty to record or note the satisfaction, and he also claims section 598.22, as amended, is constitutionally infirm. Specifically he argues the section denies equal protection of the law by requiring child support judgment debtors to make payments through the clerk of court while other judgment debtors can satisfy their obligations privately. This requirement, he asserts, has no rational relationship to the goal of enforcing child support obligations against nonpaying parents. Dwyer also contends the statutory language is unconstitutionally overbroad. Due to our resolution of his first argument,

we need not address Dwyer's constitutional challenges to the statute on its face and as applied to him.

II. *Duty of clerk of district court to record the satisfaction of judgment.* The general duties the clerk of the district court *shall* perform are specified in Iowa Code section 602.8102 (Supp.1985). Subsection 602.8102(98) imposes a duty on the clerk of court to carry out duties specified in Iowa Code sections 624.8 through 624.21 and section 624.37. Iowa Code section 624.20 (1985) states, "Where a judgment is set aside or satisfied by execution or otherwise, the clerk shall at once enter a memorandum thereof on the column left for that purpose in the judgment docket."

The clear duty of Dwyer's former wife to execute a satisfaction of judgment is imposed on her by statute at Iowa Code section 624.37. That section provides:

> When the amount due upon judgment is paid off, or satisfied in full, *the party entitled to the proceeds thereof,* or those acting for that party, *must acknowledge satisfaction thereof upon the record of such judgment, or by the execution of an instrument referring to it, duly acknowledged and filed in the office of the clerk in every county wherein the judgment is a lien.* A failure to do so for thirty days after having been requested in writing shall subject the delinquent party to a penalty of fifty dollars, to be recovered in an action therefor by the party aggrieved.

Iowa Code § 624.37 (emphasis added).

The clerk of court, even though aware of these provisions, refused to note on the dissolution judgment docket the December 1985 satisfaction of judgment affidavit executed by Dwyer's ex-wife and presented for filing by Dwyer. Relying on an Iowa attorney general's letter opinion, the clerk asserted that the 1985 amendment of Iowa Code section 598.22 prohibited the noting of the satisfaction affidavit on the judgment docket. The amended statute reads in relevant part:

> All orders or judgments entered under chapter 252A, chapter 675, or this chapter which provide for temporary or permanent support payments shall direct the payment of such sums to the clerk of the district court for the use of the person for whom the payments have been awarded. *Payments to persons other than the clerk of the district court do not satisfy the support obligations created by such orders or judgments....*
>
> ....
>
> An order or judgment entered by the court for temporary or permanent support or for an assignment shall be filed with the clerk. The orders have the same force and effect as judgments when entered in the judgment docket and lien index and are records open to the public. The clerk shall disburse the payments received pursuant to the orders or judgments within ten working days of the receipt of the payments. All moneys received or disbursed under this section shall be entered in a record book kept by the clerk, which shall be open to the public. *The clerk shall not enter any moneys paid in the record book if not paid directly to the clerk....*

Iowa Code § 598.22 (Supp.1985) (emphasis added).

Our rules of statutory construction direct us to give effect, if possible, to both general and special provisions of the code that apparently conflict. Iowa Code § 4.7 (1985). *See generally* 2A N. Singer, *Sutherland Statutory Construction* ch. 51 (Sands 4th ed. 1984) (construing statutes in pari materia).

This mandamus action is directed at a clerk of court's duty to file and note papers presented by parties to an action, the petitioner and respondent in the underlying dissolution of marriage case. The clerk has a ministerial duty to file and note satisfactions of judgment presented to the clerk. Iowa Code §§ 602.8102(98), 624.20. Section 598.22, as amended, does not relieve the clerk of the duty to file and note satisfactions. Section 598.22 merely puts in question the validity or legal effect of a satisfaction of child support judgment document executed by a recipient former spouse who accepts payments outside the clerk's office.

Dwyer does not challenge the provision of section 598.22 that prohibits the clerk from entering moneys paid outside the clerk's office in the clerk's record book concerning child support. The clerk maintains two sets of books relating to dissolutions and child support payments in the clerk's office. The alimony and child support payment book, referred to in section 598.22, is a ledger of the cash and checks received by the clerk and the disbursement made of those moneys. This is the record book mandated by title 42, subsection 654(10) of the United States Code (1982). Dwyer concedes his payments should not be recorded in this book because the payments were not channeled through the clerk's office.

The clerk also maintains a dissolution judgment docket that recites the date events occur in the file. *See* Iowa Code § 602.8104(2)(b) (Supp.1985). The docket notes when a decree ordering the payment of child support has been entered. It also leaves spaces for the notation of executions and satisfactions of judgment. Section 598.22 does not refer to this judgment docket, on which Dwyer seeks to compel the clerk to note his ex-wife's satisfaction affidavit and to which Iowa Code section 624.20 (1985) specifically refers.

■ The clerk of the district court is under a duty pursuant to subsection 602.-8102(98) to file and note all documents presented to the clerk for filing. It is not the clerk's duty or function to rule on the validity or legal effect of the document so received. *Cf. Proctor v. Garrett,* 378 N.W.2d 298, 299 (Iowa 1985) (county recorder compelled to record common-law lien without regard to legal validity of the lien).

In *Proctor v. Garrett,* farmers attempting to record common-law liens against their properties sought a writ of mandamus to compel recordation following the county recorder's refusal to record such liens. 378 N.W.2d at 298. When we considered that case, we had already determined common-law liens had no validity in Iowa. *Id.* (citing *Federal Land Bank v. Boese,* 373 N.W.2d 118 (Iowa 1985)). We

concluded, however, that the county recorder had a ministerial duty to record those liens, subject to the district court's determination of the *validity* of the recorded documents in an appropriate later proceeding. *Id.* at 299. We concluded it was not the function of the county recorder to determine the proffered document had no legal validity and thus refuse to file it.

The validity and legal effect of a satisfaction of judgment also are properly left to the court in any later proceeding that may challenge the filed and noted satisfaction affidavit. The payor former spouse carries the burden of proving the payee ex-spouse has received valuable consideration for a release and satisfaction of judgment. *See Broyles v. Iowa Dep't of Social Servs.,* 305 N.W.2d 718, 723 (Iowa 1981).

Iowa Code section 598.22 (Supp.1985) may raise the question whether any satisfaction executed by Dwyer's ex-wife would have the legal effect of validly satisfying ,the child support judgment entered against him. In the defendant clerk's view, the provision apparently precludes the crediting of any amounts Dwyer has paid to his ex-wife outside the clerk of court's office against the child support judgment, even though there is no dispute by the parties or the clerk that the payments were made and Dwyer is current on his child support obligation. The clerk of court in her motion for judgment on the pleadings admitted Dwyer had made all payments due by him to his ex-wife under the decree. Under that view, the section also would seem to preclude Dwyer in a later proceeding, challenging the filed and noted satisfaction or citing him for contempt, from proving the payment of these amounts by cancelled checks and acknowledged satisfactions of judgment; further, the judgment could then be satisfied only by making duplicate payments through the clerk's office. This could result in unfairness to a person in Dwyer's position. The question of the legal effect of the affidavit of satisfaction of the judgment signed by Dwyer's ex-wife, however, is not before us.

We believe the relevant statutes must be reconciled if possible, even though their

wording could allow a contrary interpretation. Section 624.37 imposes a clear and specific duty upon a judgment creditor, such as Dwyer's ex-wife, to satisfy the judgment when paid. Section 598.22, as amended, must be construed, if possible, to permit the judgment creditor former spouse to fulfill this duty and allow the clerk to enter the satisfaction. This can be done if we allow the clerk to enter the satisfaction affidavit of the former spouse on the judgment docket, yet reserve the issue of the validity of the proffered affidavit of satisfaction. This is consistent with *Broyles.*

In construing section 598.22, as amended, we cannot assume the legislature intended to enact a law that would lead to absurd consequences where, as here, a child support judgment debtor has indisputably paid all sums due under the decree but the clerk refuses even to note the judgment creditor's affidavit of satisfaction on the judgment docket book.

We only hold that the clerk of the district court had a duty to file the affidavit of satisfaction and enter a memorandum thereof on the judgment docket as required by Iowa Code sections 624.20 and 624.37.

We would encourage the legislature to review section 598.22 with two considerations in mind. First, the laudatory purposes of discouraging fraud and encouraging accurate record keeping concerning child support should be retained. At the same time the legislature should attempt to provide a means by which a payor spouse, who maintains an amicable relationship with the former spouse and who seeks to keep their monetary affairs private, indisputably can prove that payments in the amount specified in the dissolution decree were made to the former spouse, outside the clerk's office.

We reverse the district court's denial of the writ of mandamus and remand the case for an appropriate order directing issuance of the writ.

REVERSED AND REMANDED.

All Justices concur except REYNOLDSON, C.J., and SCHULTZ, WOLLE, and NEUMAN, JJ., who dissent.

REYNOLDSON, Chief Justice (dissenting).

I cannot agree that the district court's well-reasoned ruling, denying mandamus in these circumstances, should be overturned.

The rules we apply in these cases are summarized succinctly in 52 Am.Jur.2d *Mandamus* § 64, at 388 (1970):

> To warrant the issuance of [a] writ [of mandamus], not only must there be a legal right in the relator, but, owing to the extraordinary and drastic character of mandamus and the caution exercised by courts in awarding it, it is also important that the right sought to be enforced be clear and certain. There must be an immediate right to have the act in question performed, and such right must be specific, well defined, and complete, so as not to admit of any reasonable controversy.

*See Hewitt v. Ryan,* 356 N.W.2d 230, 233 (Iowa 1984); *Hurd v. Odgaard,* 297 N.W.2d 355, 357 (Iowa 1980); *Headid v. Rodman,* 179 N.W.2d 767, 770 (Iowa 1970) ("Plaintiff's right to the performance of the act he seeks to compel must be clear, certain and free from the possibility of any reasonable controversy."). In the face of these principles, it ought to give us pause in reversing the district court when plaintiff deems it necessary to attack the constitutionality of the statutes the clerk was following in refusing to make a book entry that defendant's obligations under the dissolution decree were satisfied.

Further, plaintiff's brief concedes that at least in the 1985 amendments to Iowa Code section 588.22 "it is clear that the legislature intended to require, prospectively, payments to be made through the office of the Clerk of Court." Nowhere in the Iowa law do we find the concept that a friendly relationship between parties to a dissolution decree, however commendable, will excuse a failure to comply with the plain language of the decree, or the express intent of Iowa

Code provisions. Plaintiff's quandary clearly is of his own making.

I. District court was on solid ground in holding amended Iowa Code section 598.22 constitutional. Plaintiff's brief concedes the "State has a legitimate interest in seeing that parents support their children." The state has evidenced this concern, at least from the inception of our 1970 "no-fault" dissolution act,[1] by requiring that all orders for support shall direct "the payment of such sums to the clerk of the district court for the use of the person for whom the payments have been awarded." Iowa Code § 598.22 (1985) (as amended by 1985 Iowa Acts ch. 178, § 8). Such orders shall be "open to the public." *Id.* If the ordered payments are not paid, the clerk is mandated to certify a default to the court, which, on its own motion, may institute contempt proceedings. *Id.*

The reasons for a readily available record of support payments, kept by a public official, are plain enough. Domestic relations cases, many generated by child support controversies, clog our courts and comprise almost fifty percent of our civil docket. Nor is Iowa an exception to the national problem palpated by Senate Report (Finance Committee) No. 93–1356, relating to the Social Services Amendments of 1974:

> The problem of welfare in the United States is, to a considerable extent, a problem of the non-support of children by their absent parents. Of the 11 million recipients who are now receiving Aid to Families With Dependent Children (AFDC), 4 out of every 5 are on the rolls because they have been deprived of the support of a parent who has absented himself from the home.

1974 U.S.Code Cong. & Admin.News 8133, 8145.

Support payments too long delinquent have triggered coercive settlements for desperate custody parents, impoverishing such parents and their children. *See, e.g.,*

*In re Marriage of Carlson,* 338 N.W.2d 136 (Iowa 1983). In other situations alleged releases of unrecorded support payments, *e.g., Broyles v. Iowa Dep't of Social Servs.,* 305 N.W.2d 718, 723 (Iowa 1981), and oral or written "modifications" of support obligations, *e.g., Denning v. Denning,* 185 N.W.2d 238, 240 (Iowa 1971); *Herb v. Herb,* 251 Iowa 957, 959–60, 103 N.W.2d 361, 362 (1960), have resulted in unnecessary litigation.

Small wonder, then, that the legislature took additional steps to insure compliance with the original intent and purpose of Iowa Code section 598.22. The 1985 amendments to section 598.22 [2] specifically provided that except in certain circumstances not present here payments to persons other than the district court clerk *"do not satisfy* the support obligations created by such orders or judgments." Iowa Code § 598.22 (1985) (as amended by 1985 Iowa Acts ch. 178, § 8) (emphasis added). Except for those same circumstances, the amendments further provided that "[t]he clerk shall not enter any moneys paid in the record book if not paid directly to the clerk." *Id.* This legislation of course furthers the intent of Congress expressed at 42 U.S.C. section 654 ("State plan for child and spousal support"), subsection 10 of which states the plan must "provide that the State will maintain a full record of collections and disbursements made under the plan and have an adequate reporting system." 42 U.S.C. § 654 (1982).

Addressing the constitutionality of these statutory provisions, plaintiff's brief concedes a suspect classification is not involved here. We thus apply the analysis recently articulated in *State v. Martin,* 383 N.W.2d 556, 560 (Iowa 1986):

> Because the statute does not involve a suspect classification or a fundamental right, it is evaluated under the traditional test for equal protection. Under that test, the statute is presumed to be valid and will be sustained if the classification

---

**1.** 1970 Iowa Acts ch. 1266.

**2.** In 1986 the legislature underscored its intent by inserting essentially the same language in a

new code chapter creating the child support recovery unit. *See* Iowa Code § 252B.14 (1987).

drawn is rationally related to a legitimate state interest.

I agree with the district court that "[t]he State has a legitimate governmental interest in promoting compliance with the law, preventing fraud, and protecting its citizens from unnecessary court litigation." Iowa Code section 598.22 as amended does not violate the equal protection provisions of the United States and Iowa Constitutions.

Nor are the amendments under scrutiny unconstitutionally overbroad as claimed by the plaintiff. Here the plaintiff appears to argue the 1985 amendments sweep too broadly in adversely affecting someone like him, who has merely violated the court's decree by making payments directly to the custodial parent. Plaintiff cites no helpful authority. Ordinarily legislation is challenged for overbreadth only where there is a claimed violation of first amendment rights. 16A Am.Jur.2d *Constitutional Law* § 460, at 246–48 (1979); see, e.g., *State v. Wedelstedt*, 213 N.W.2d 652, 654–56 (Iowa 1973). Plaintiff's "overbreadth" contention is without merit.

II. Not only is there strong authority to hold amended Iowa Code section 598.22 constitutional, there is support to hold the defendant clerk rightly refused to enter satisfaction of the child support judgment.

The majority embraces plaintiff's argument that Iowa Code sections 602.8102(98), 624.20, and 624.37 require the clerk to enter a notation of satisfaction of the child support judgment on the judgment docket. These statutory provisions apply to judgments generally. The flaw in this analysis is that a child support judgment, under the plain language of amended Iowa Code section 598.22, *is not satisfied* by payments to persons other than the clerk of the district court. Amended Iowa Code section 598.22 is a specific statute dealing directly with the manner of satisfying child support judgments. Under a well-settled principle of Iowa law, this specific statute prevails over the general statutes relating to judgments. Iowa Code § 4.7 (1985); *Ritter v. Dagel*, 261 Iowa 870, 881, 156 N.W.2d 318,

324–25 (1968); *State v. Halverson*, 261 Iowa 530, 537–38, 155 N.W.2d 177, 181 (1967) ("It is a fundamental rule that where a general statute, if standing alone would include the same matter as a special statute and thus conflict with it, the special act will be considered an exception to or qualification of the general statute and will prevail over it, whether it was passed before or after such general enactment.").

If, as plaintiff contends, these conflicting statutes must be "construed, if possible, so that effect is given to both,"[3] then it must be conceded that section 598.22 defines the only manner in which a child support judgment can be *satisfied* and only upon satisfaction in the prescribed way does the clerk have an obligation to note the judgment satisfied under sections 602.8102(98), 624.20, and 624.37.

The distinction between this case and *Proctor v. Garrett*, 378 N.W.2d 298 (Iowa 1985), relied on by the majority, is clear. In *Proctor* we held the county recorder was not authorized to make a judgment on the validity of a common-law lien presented for recording. In the case before us the clerk was not called upon to exercise a judgment whether the obligation of the support decree was satisfied. The clerk's own record of payments, which the clerk was obligated to keep, immediately disclosed there was no satisfaction of the judgment. To require the clerk to note a judgment satisfied upon presentation of a purported written "satisfaction" not only would require the clerk to ignore his or her own records, but would violate the plain statutory intent. Further, it would effectively repeal the legislative language that specifically declares, in amended Iowa Code section 598.22, that such a judgment *is not satisfied* by payments made to a person other than the clerk.

The majority's solution is to return the parties and the State to the conditions the 1985 amendments to section 598.22 were designed to cure. The majority reasons the validity and legal effect of the purported "satisfaction" may be fought out in subse-

---

**3.** See Iowa Code § 4.7 (1985).

quent lawsuits to determine whether the payments actually were made, or whether statutory liens on real estate still exist.[4] This result leaves Iowa's title examiners in a murky battlefield saturated with legal land mines.

I would deny the writ of mandamus on the ground there is a reasonable controversy whether the clerk was required to note the "satisfaction" of the judgment against this plaintiff. Were I to reach the merits, I would hold the clerk had no such obligation with respect to any written "satisfaction" relating to required child support payments falling due after July 1, 1985, the effective date of the 1985 amendments to Iowa Code section 598.22.

SCHULTZ, WOLLE, and NEUMAN, JJ., join this dissent.

4. "A court-ordered child-support judgment becomes a lien when payment is due." *In re Marriage of McMorrow*, 342 N.W.2d 73, 75 (Iowa 1983) (quoting *Broyles v. Iowa Dep't of Social Servs.*, 305 N.W.2d 718, 721 (Iowa 1981)); *see* Iowa Code § 624.24 (1985) (as amended by 1985 Iowa Acts ch. 100, § 9 and as repealed and substitute enacted, 1986 Iowa Acts ch. 1014, § 2).